IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMES AND GRISELL ROBINETTE | ) | CASE NO. 11-70557 |
| RODNEY AND TERESA STAMBACK, | ) | CASE NO. 11-71617 |
| | ) | |
| Debtors. | ) | CHAPTER 13 |

## JOINT MEMORANDUM DECISION

The matters before the Court are the Chapter 13 Trustee's objections to confirmation of the Debtors' post-confirmation modified plans in two unrelated cases, James and Grisell Robinette and Rodney and Teresa Stamback. These cases, although having some material factual differences, present a common legal issue relating to how payments received, pursuant to an existing wage deduction order, in the interval between the time a modified plan is prepared and the date it is actually filed, should be applied – to an existing delinquency under the confirmed plan or the obligations to accrue under the terms of the modified plan? For the reasons set forth below, the Court will overrule the Trustee's objections and confirm the modified plans.

FINDINGS OF FACT

*Robinette Case*

James and Grisell Robinettes' Chapter 13 Plan was confirmed on May 24, 2011. This plan provided for the Debtors to pay $525 for sixty months with a total amount to be paid into the plan of $31,500. The total non-priority unsecured debt listed in the plan summary was $39,985.62 and distribution to unsecured creditors was estimated at 10%. On January 29, 2013

the Debtors filed an Amended Plan dated January 15, 2013. As of the date of the new plan the Debtors were delinquent in their payment obligation to the Trustee under the terms of the confirmed plan. Between those two dates, specifically on January 28, 2013, the Trustee received a payment from Mr. Robinette's employer in the amount of $242.31.[1] This plan proposes for the Debtors to pay $250 per month for four months starting in February and then $525 for thirty-four months. These payments are in addition to $11,469.33 previously paid, for a total of $30,319.33. The modified plan lists a total of $38,334.45 in unsecured non-priority debt and provides for an estimated distribution of 15% to unsecured creditors. On March 5, 2013, the Trustee filed an objection to confirmation stating:

> The amount previously paid under the Plan is actually greater than what is stated in the plan. The amount paid is $11,711.64 and together with the payment schedule set forth in the Amended Plan the total to be paid under the Amended Plan will be $30,561.64.

The difference between the amount the Debtors set forth in the Amended Plan and what the Trustee listed in his objection is $242.31. The Trustee is seeking to add this amount for an increased total amount to be paid under the Plan. Confirmation of the Plan and the Trustee's objection to confirmation were heard on March 11, 2013.

*Stamback Case*

Rodney and Teresa Stambacks' Amended Chapter 13 Plan was confirmed on March 19, 2012. That plan provided for the Debtors to pay $250 per month for seven months starting in February 2012, then $550 per month for forty-eight months in addition to $1,365.39

---

[1] This information was provided in the Trustee's Exhibit 1 filed on March 12, 2013.

previously paid. The total amount to be paid into the plan was $29,515.39. The total non-priority unsecured debt listed in the plan summary was $55,060.90 and distribution to unsecured creditors was estimated at 11%. On December 18, 2012 the Trustee filed a Motion to Dismiss alleging that the Debtors were delinquent in the amount of $1,253.94. On January 22, 2013 the Debtors filed an Amended Plan dated January 21, 2013. This new plan proposes for the Debtors to pay $250 for seven months starting in February 2013 and then $695 for thirty-six months. These payments are in addition to $4,176.83 previously paid for a total of $30,946.83. On January 22, 2013, the very date the modified plan was filed, the Trustee received a payment from Mrs. Stamback's employer in the amount of $115.38.[2] The Amended Plan lists a total of $51,739.90 in unsecured non-priority debt and provides for an estimated distribution of 10% to unsecured creditors. On March 4, 2013, the Trustee filed an objection to confirmation stating:

> The Trustee is also recommending a clarification in the confirmation order to correct the amount previously paid under the Plan by the Debtors. The clarification will reflect that the Debtors previously paid $4,292.21 under the Plan and together with the payment schedule as set forth in the amended plan, a total of $31,062.21 will be paid under the plan.

The difference between the amount the Debtors set forth in the Amended Plan and what the Trustee listed in his objection is $115.38. The Trustee is seeking to add this amount for an increased total amount to be paid. Confirmation of the Plan, the Trustee's objection to confirmation, and the Trustee's Motion to Dismiss were heard on March 11, 2013.

---

[2] This information was provided in the Trustee's Exhibit 1 filed on March 12, 2013.

PROCEDURAL HISTORY

On March 11, 2013, the Court heard oral arguments from the Trustee[3] and Michael D. Hart, Esq., counsel for the Debtors in both cases. After hearing the parties' arguments regarding the method of application of a payment made between the date of preparing a modified plan and the date of its filing, the Court took both cases under advisement. On March 13, the Court requested the Trustee to set forth the authority he relied on to support his contentions. The Trustee responded by letter filed with the Court on March 14.[4] The Court responded to the Trustee's letter and invited Mr. Hart to respond to the Trustee's arguments. Mr. Hart did so by filing a letter with the Court on March 20.[5] Accordingly, these matters are ready for decision.

CONTENTIONS OF THE PARTIES

The parties do not dispute the material facts. At the hearing the Trustee argued that the payments should be applied to the existing deficiencies in the previously confirmed plans and ought to be in addition to payments proposed to be made under the terms of the modified plans. This would result in a larger amount to be paid into each plan overall. His main contention was that, because the Debtors are on wage deduction orders, they are perpetually behind. There are two months in a year where the Debtors pay three times in one month and that catches them up for the preceding five months where they made less than a full monthly plan

---

[3] The Chapter 13 Trustee in these cases is Christopher T. Micale, Esq.

[4] Docket Entry #44 in the Robinette case and Docket Entry #90 in the Stamback case.

[5] Docket Entry #46 in the Robinette case and Docket Entry #92 in the Stamback case.

payment. The plans provide for monthly payments but as Debtors get paid every two weeks, the two payments made in most of the months do not amount to a full plan payment. In the Robinette case the wage deduction provides for payments of $242.31 which, when multiplied by two, equals $484.62. The monthly plan payments required by the confirmed plan are $525. In the Stamback case the wage deduction provides for payments of $115.38 which, when multiplied by two, equals $230.76. The monthly plan payments required in that case by the confirmed plan are $550.[6] Only when a month comes around with three pay periods do the plan payments get caught up. January was a month in which the Debtors had three pay periods and the Trustee therefore argues that the third payment should be applied to the obligation under the confirmed plan.

In response, counsel for the Debtors contended that it is irrelevant whether the payments made between preparation and filing were catching up previous payments. He argued that the figures in the modified plan, especially the total amount to be paid into the plan, were controlling once the modified plan is filed and noticed to the creditors. Whether the payment was for January or February is irrelevant as the modified plan was correct at the time it was prepared. At the conclusion of the hearing the Trustee submitted pay histories for both cases which were admitted into evidence as Trustee's Exhibit 1.

In the Trustee's letter responding to the Court's request for support of his arguments, he states that his "position is best conveyed with a holistic reading of Chapter 13."

---

[6] The confirmed plan required seven payments of $250 beginning in February 2012 and then forty-eight payments of $550. Based on the Trustee's Exhibit 1, the wage deduction order was never amended to provide for the increase in plan payments. As a result, not even three payments of $115.38 would constitute a full plan payment of $550. Three plan payments of $115.38 would have been sufficient had the plan payment remained at $250.

5

He pointed out that under 11 U.S.C. § 1326 debtors are required to commence plan payments within 30 days of filing the plan or the petition filing date, whichever is earlier. The plan summary provides for the number and amount of monthly payments as well as a separate number representing the total amount to be paid into the plan, also called the "base amount." This base amount should be equal to the number of monthly payments multiplied by the number of months of the plan plus any additional payments that are provided for. The Trustee asserts that the Debtors effectively bargained with their creditors to provide a pool of money in anticipation of a discharge of the remaining debt. He goes on to argue that, although 11 U.S.C. § 1329 allows debtors to modify their confirmed plans, the modifications must comply with § 1329(b). The Trustee gives an example that debtors could reduce the total payments to unsecured creditors should they experience a justified change in circumstances but not if the debtors wanted to incur debt to purchase a Mercedes or forgive plan payments so that they could go on a vacation. He has made no assertion, however, that any such situation is applicable in either of the cases under consideration here.

Next the Trustee sets out the factual circumstances of each case. In the Robinette case the Debtors' confirmed plan provided for sixty payments of $525 for a total of $31,500. The Debtors filed on March 18, 2011 and thus the first payment was due on April 18, 2011. The Amended Plan provides for payments to resume in February 2013; thus the previously paid amounts should account for all payments through January 2013. The Debtors should have paid $525 for a period of twenty-two months or a total of $11,500. The Amended Plan asks to reduce this to $11,469.33 with a total to be paid of $30,319.33, a reduction of $1,180.67 from the $31,500 promised in the confirmed plan. This reduction, the Trustee contends, must be analyzed

under § 1329(b).  The cause of this decrease is not stated on the face of the plan.  The Trustee states that it can be inferred from the Amended Plan that the Debtors incurred a postpetition mortgage arrearage.  If that is the basis for the reduction, the Trustee argues that it fails under § 1325(a)(3) and (b).[7]

   The Trustee continues with the Stamback case.  The Debtors filed on August 1, 2011 with the first payment due on September 1, 2011.  The confirmed plan provides for stepped payments:  five payments totaling $1,365.39, seven payments of $250 from February 2012 to August 2012 totaling $1,750, and forty-eight payments commencing in September 2012 of $550 totaling $26,400.  This results in a total funding of $29,515.39.  The modified plan commences payments in February 2013 and accounts for only $4,176.83 paid through January.  Based on the terms of the confirmed plan the total previously paid should have been $5,865.39.  The total to be paid under the provisions of the modified plan is $30,946.83, which is $1,431.44 more than the amount committed under the terms of the confirmed plan.[8]  The reason for the Stambacks' failure to make all payments called for under the provisions of the confirmed plan prior to filing the modified plan is not stated and again the Trustee suggests that it can be inferred that the Debtors incurred postpetition mortgage arrears.  The Trustee argues that the failure to maintain a mortgage payment does not justify reducing the pool available to unsecured creditors and that

---

[7] The Trustee's letter asserts:  "The only thing that can be gleaned from the modified plan as to the basis is that the debtors incurred post-petition mortgage arrears as indicated in paragraph five of the modified Chapter 13 plan.  If this is the only basis then it fails to comply with 11 U.S.C. §§ 1325(a)(3) and (b) in that the debtors simply failed to maintain their post-petition mortgage payments."

[8] While the amount to be paid into the plan is increased, the distribution to unsecured creditors is to be decreased from 11% to 10%.

7

there is nothing to indicate a change in financial circumstances that justifies the reduction in the net amount to be distributed to the general creditors.

The Court responded to the Trustee's letter by stating that the Trustee's contentions broadened the inquiry, appeared to be more case specific, and might require an evidentiary hearing to determine the underlying facts. In its response letter the Court invited Mr. Hart to respond to the Trustee's arguments.

Mr. Hart replied that the issue before the Court, as it was framed at the hearing, is narrow. The matter is simply a question regarding the application of a payment made between the preparation of a modified plan and the filing of that modified plan. At the hearing the Debtors argued that the interim payment should be applied consistently with the terms of the modified plans. The Trustee argued that the interim payment should be applied to the confirmed plan payments which thereby would increase the amount due under the modified plan. Mr. Hart asserts that the Debtors' position is supported by § 1329(b)(2) which states, "The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved." He goes on to state that the Trustee did not offer any authority for the argument that the modified plan should be revised based on interim payments received. Next, he contends that the Trustee's letter is not a clarification of his earlier argument but is in fact an attempt to raise a new objection after the hearing. The Debtors do not dispute the authority of the Trustee to object on the basis that the Debtors need to demonstrate changed circumstances, but they assert that the objection was not timely raised and is not properly before the Court. Mr. Hart reiterates the Debtors' requests for confirmation of their modified plans. He also notes that in the Robinette

case the amended plan increases the distribution from 10% to 15%[9] while the Stamback case decreases distribution from 11% to 10%. In the Stamback case the Debtors provided the Trustee with an explanation of the change in circumstances in an email dated February 28, 2013. He goes on to assert that both modified plans were brought about by an adverse change in the respective Debtors' financial circumstances.

CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. "Core" proceedings in bankruptcy as provided for in 28 U.S.C. § 157(b)(2) expressly include "confirmation of plans" and therefore the determination of objections raised to confirmation. § 157(b)(2)(L).

The question before the Court raised at the hearing, as already noted, is how to apply a payment made between the preparation of a modified plan and the filing of that modified plan. The Bankruptcy Code section that addresses modification of a plan after confirmation is § 1329 and it sets out:

---

[9] This purported increase in distribution percentage to unsecured creditors at the same time that total funding is being decreased and the amount to be paid to the mortgagee is being increased appears to be the result of two factors: (1) the distribution percentage appears to be calculated on the claims actually filed and therefore allowed as compared with the total amount of scheduled unsecured debt, and (2) the amount of a secured claim provided for in the confirmed plan was greater than the amount of the claim later filed by the secured creditor. Accordingly, it does appear that the aggregate total amount of actual distribution to the unsecured creditors generally will be diminished, rather than increased, under the terms of the modified plan. The Trustee has not challenged the Robinette modified plan on this basis.

9

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed secured claim, to --
> (1) increase or reduce the amount of payments on claims of a particular class provided by the plan;
> (2) extend or reduce the time for such payments. . .
>
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
>
> (c) A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

The Trustee takes issue with the fact that the Debtors in both cases filed modified plans as a result of their failure to make postpetition mortgage payments. *Collier on Bankruptcy* specifically addresses this issue with regard to § 1329. "The debtor may wish to modify the plan for any number of reasons. A debtor may fall behind on postpetition mortgage payments and then seek to modify the plan to provide for a cure of the postpetition default." 8 *Collier on Bankruptcy* ¶ 1329.02, at 1329-4 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012). The Trustee also contends that, absent a further showing from the Debtors, there are not sufficient changes in circumstances to allow the Debtors to modify their plans. In their treatise on Chapter 13 bankruptcy, Judges Lundin and Brown (ret'd) assert that "[c]hanged circumstances should not be a separate condition for modification of a confirmed plan but should be considered as evidence bearing on other statutory tests for modification under § 1329(b)(1)."

Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, *4th Edition*, § 257.1, at ¶ 15, Sec. Rev. June 9, 2004, www.Ch13online.com.

The Trustee also argues that the plans fail to comply with § 1325(a)(3), which states, "Except as provided in subsection (b), the court shall confirm a plan if -- . . . the plan has been proposed in good faith and not by any means forbidden by law." In addition, the Trustee challenges the Stamback case under § 1325(a)(4) which states:

> (a) Except as provided in subsection (b), the court shall confirm a plan if – . . .
> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

The liquidation analysis contained in the Amended Plan in the Stamback case states that unsecured creditors would receive 0% if the case were liquidated under a Chapter 7 and the Trustee has offered no factual basis to dispute such representation. The Trustee did not raise this issue in the Objection he filed on March 4 or at the confirmation hearing.

Additionally the Trustee asserts that the Robinette case runs afoul of § 1325(b) but fails to offer any explanation of why that would be true particularly in the Robinette case but not also in Stamback. The Trustee also footnotes his acknowledgment of a split in authority as to whether § 1325(b) applies to post-confirmation modified plans. He goes on to state that even courts that do not apply § 1325(b) to post-confirmation modified plans will generally review a debtor's expenditures under § 1325(a)(3). His argument on this point seems rather murky, however, as the only specific argument made in his letter with respect to the possible application of § 1325(b) is that it would be used to preclude a debtor from obtaining confirmation of a

modified plan proposing that the unsecured creditors ought to take less so that the debtor could purchase a luxury vehicle or take a vacation, neither of which situations or anything comparable has been suggested to be in play here.

## DECISION

The Court finds Mr. Hart's comments persuasive in that the Trustee's letter raises new contentions not expressed in his objection to confirmation or at the confirmation hearing. While the question the Trustee raises as to whether the Debtors' unsecured creditors ought to bear the expense of their failures to make post-confirmation mortgage payments is a good one, the problem is that the same issue is presented even if the Trustee's position at confirmation is accepted and the interval payments are added to the total amounts to be paid under the terms of the modified plans. At the confirmation hearing, however, he recommended confirmation subject only to the condition that the provisions of the modified plans be revised to add the interval payments to the total amounts to be paid into the plans. If the Debtors are to blame for their respective failures to maintain their post-confirmation mortgage payments in a current status, that is an issue which ought to be considered on its own merits and be raised by the Trustee before recommending confirmation. Accepting the Trustee's contention would simply reduce slightly the degree to which the unsecured creditors are adversely affected by the modified plans as compared to the confirmed plans, not address fully the effect noted by the Trustee. The Court is not persuaded by the specific arguments advanced by the Trustee that

either the Code or the Rules of Bankruptcy Procedure require or support the result he urges.[10] The provisions of the proposed modified plans are specific and clear and no other party in interest has raised any objection to their confirmation. Although it may be observed that the practical effect of confirmation in these cases will be to forgive by implication payments which accrued under the confirmed plans, such a result can be expressly included in a modified plan and where otherwise appropriate confirmed and the Court finds no persuasive reason to disapprove a de facto waiver as opposed to an express one. Accordingly, the Court will overrule the Trustee's objections and request that he submit orders in the customary format confirming the modified plans as proposed by the Debtors.

Decided this 1st day of April, 2013.

*William F. Stone, Jr.*
_____
UNITED STATES BANKRUPTCY JUDGE

---

[10] The Court notes that its decision is based on the specific arguments offered by the Trustee to which the Debtors have responded and therefore is limited to those contentions. Under the circumstances presented in this dispute and reviewed elsewhere in this Decision, the Court declines to address the issue whether § 1325(b) is applicable to consideration of a post-confirmation modified plan, and if so, the consequence of such application to confirmation of the modified plans before the Court in these cases.